IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| R. H., a minor, RICHARD H., GUARDIAN AD LITEM FOR R. H., a minor, and RICHARD H.,<br><br>Plaintiffs,<br>v.<br><br>LOS GATOS UNION SCHOOL DISTRICT, LOS GATOS-SARATOGA RECREATION, LISA FRASER, LISA NANEZ, CURTIS SUMMERS, and DAN RACIMO, and DOES 1 THROUGH 50, INCLUSIVE,<br><br>Defendants.<br>_____/ | CASE NO. 5:11-cv-03729-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (FRCP 12(B)(6)) (DOC. 13).** |

Plaintiffs R. H. and his father and guardian, Richard H., have filed an eleven- count Complaint against the Defendants alleging violations of R. H.'s 14th Amendment liberty interests, as well as various state law torts (Doc. 4).[1] The case arises out of injuries R. H. suffered during a school-sponsored wrestling match held on December 3, 2010. At the time of the incident, R. H. was a student and member of the varsity wrestling team at Fisher Middle School, located within the Defendant Los Gatos Union School District (the "School District"), and a student athlete in the Defendant Los Gatos-Saratoga Community Education and Recreation (the "Recreation Department"). At all times relevant to this action, Defendant Lisa Fraser was the principal of Fisher Middle School, and Defendant Lisa Nanez was the athletic director for Fisher Middle School, as well as a managing agent of the Recreation Department. Defendants Curtis Summers and Dan Racimo were wrestling coaches for the Recreation Department, and coached R. H. throughout the 2010 wrestling season, including the December 3, 2010 match.

The Defendants have filed a joint motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking

---

[1] The Plaintiffs filed their original complaint on July 29, 2011 (Doc. 1), and filed their First Amended Complaint, which governs the case, on September 15, 2011 (Doc. 4).

1

CASE NO.
TITLE

1  dismissal of ten of the claims asserted in the Plaintiffs' Amended Complaint (Doc. 13).[2] The Plaintiffs
2  have filed a response in opposition (Doc. 19), and the Defendants have filed a reply (Doc. 22). The
3  issues have thus been fully briefed, and oral argument was heard on August 2, 2012. For the reasons
4  discussed below, the Court finds that the motion to dismiss is due to be granted in part and denied in
5  part, and the Plaintiffs shall be given leave to file a second amended complaint.

## I.

## The Alleged Facts

R. H. was a new student at Fisher Middle School in the Fall of 2010. He joined the school wresting team on October 12, 2010. At that time, R. H.'s recorded weight, wearing street clothes and shoes, was 155.3 pounds. Racimo placed R. H. on the varsity wrestling team, due to R. H.'s height, positive attitude and work ethic. However, R. H. had no wrestling experience.

R. H. wrestled primarily in the 155-165 lb. weight class, and lost every match but one during the season. In contravention of applicable rules and guidelines, Racimo and Summers did not weigh R. H. prior to any of his school meets, even though it was apparent that he was losing weight.

On Thursday, December 2, 2010, the day before the Middle School Wrestling League Finals, R. H. weighed in at 148.5 pounds. Although all student wrestlers are required to weigh-in the morning of a meet in just their underwear, Racimo instructed R. H. to weigh in on December 2, 2010 wearing his street clothes and "whatever might easily fit into [his] pockets." (Doc. 4, ¶ 22). Both Racimo and Summers witnessed and participated in R. H.'s weigh-in, and knew that the weigh-in violated applicable rules and procedures. According to the Plaintiffs, when R. H. was weighed at the hospital on Friday, December 3, 2010 in just his underwear, he weighed only 138 pounds.

At the Middle School Wrestling League Finals held at Wilcox High School in Santa Clara, California on December 3, 2010, Summers told R. H. that he would be seeded in last place, and would face the opposing wrestler seeded in first place. The Plaintiffs allege that R. H.'s opponent weighed 164 pounds at the time of the meet – approximately 25 pounds more than R. H.'s weight.

The match was over in a matter of seconds. The heavier opponent picked up R. H. and forcefully

---

[2]The Defendants do not seek dismissal of Count III - the state law claim for failure to train/hire/supervise asserted against the School District, the Recreation Department, Fraser, and Nanez.

1 slammed him into the mat. R. H.'s face was pinned between his opponent's shoulder and the wrestling
2 mat, and R. H. suffered severe facial injuries, including bilateral mandibular fractures which required
3 two surgeries to repair.

4 The Plaintiffs allege that the Defendants violated numerous public school wrestling rules,
5 including procedures for weighing-in student athletes and weight allowances, the weight classification
6 an athlete may compete in, and the specifications for wrestling mats and the use of spotters. (Doc. 4,
7 ¶ 30). More specifically, the Plaintiffs assert that the Defendants knowingly manipulated R. H.'s weight,
8 failed to properly train R. H., and ignored the procedures for match weigh-ins so that R. H. wrestled in
9 a weight class that was two classes above his alleged actual weight of 138 pounds.[3] The Plaintiffs
10 further contend that the Defendants deliberately concealed this scheme from R. H.'s father, who
11 witnessed R. H.'s injury. The Plaintiffs do not allege that any of the other Defendants actively
12 participated in this scheme, but rather assert that they either knew or should have known that Racimo
13 and Summers were manipulating weigh-ins and violating other wrestling rules and procedures, but did
14 nothing to prevent it.

15 The Plaintiffs have asserted 11 claims against the Defendants: (1) a claim under 42 U.S.C. 1983
16 against Defendants Fraser Nanez, Summers and Racimo for violating R. H.'s constitutional liberty
17 interest under the 14th Amendment (Count I); (2) a state law claim for negligence against all Defendants
18 (Count II); (3) a state law claim for failure to train/hire/supervise against the School District, Recreation
19 Department, Fraser, and Nanez (Count III); (4) a claim under 42 U.S.C. § 1983 against Fraser and Nanez
20 for failure to train/hire/supervise (Count IV); (5) state law claims for intentional misrepresentation,
21 concealment, and negligent misrepresentation against Summers and Racimo (Counts V-VII); (6) a claim
22 for dangerous condition of public property against the School District and Recreation Department (Count
23 VIII); (7) a state law claim of negligence *per se* against all Defendants (Count IX); (8) a state law claim
24 of negligent infliction of emotional distress against all Defendants (Count X); and (9) a state law claim
25 of intentional infliction of emotional distress against Summers and Racimo (Count XI). The Plaintiffs

---

28 [3]League rules allow athletes to wrestle only one class above the lowest class for which they are eligible.

3
CASE NO.
TITLE

United States District Court
For the Northern District of California

1  seek compensatory damages, punitive damages, statutory penalties, and attorneys' fees and costs.[4]

## II.

### The Standard of Review

The Defendants have moved to dismiss the Plaintiffs' Amended Complaint under Fed. R. Civ. P. 12(b)(6) on the basis that the Plaintiffs have failed to state claims upon which relief can be granted. In resolving a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the non-moving party, taking all material allegations in the complaint as true. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008); Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Fed. R. Civ. P. 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986)).

A plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that the defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotations omitted).

If the court dismisses the complaint, it should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv., Inc.,

---

[4] Although the caption of the Amended Complaint lists "injunctive relief," there is no request for such relief in the "Prayer for Relief" section of the pleading, nor are there any allegations in the Amended Complaint that would support such relief.

4
CASE NO.
TITLE

911 F.2d 242, 247 (9th Cir. 1990)).

## III.

### Discussion

A. <u>Count I - 42 U.S.C. § 1983 Claim</u>

The Plaintiffs allege that Fraser, Nanez, Summers and Racimo, as state actors, violated R. H.'s constitutional liberty interest in his bodily security under the 14th Amendment to the United States Constitution "by concealing their knowledge of the dangerous practices employed by Defendants Summers and Racimo to get the student athletes to make weight." (Doc. 4, ¶ 47). The alleged practices "included falsifying weigh-ins by instructing athletes to wear heavy clothes and to put things in their pockets to appear heavier and by instructing student athletes to dehydrate themselves in an effort to lose weight." (<u>Id.</u>).[5]

Although the Plaintiffs use the phrase "official duties" to describe these Defendants' actions (Doc. 4, ¶ 46), it is not clear from the face of the Amended Complaint whether they are pursuing this claim against the Defendants in their official or individual capacities. To the extent the Amended Complaint can be read to assert claims against them in their official capacities, the Defendants correctly argue that such claims are barred by the Eleventh Amendment and must be dismissed. See <u>Corales v. Bennett</u>, 567 F.3d 554, 573 (9th Cir. 2009); <u>Maleki v. Los Angeles Unified School District</u>, 160 Fed. Appx. 586, 588 (9th Cir. Dec. 21, 2005); <u>Belanger v. Madera Unified School District</u>, 963 F.2d 248, 251 (9th Cir. 1992). To the extent the Amended Complaint can be read to assert the § 1983 claim against these Defendants in their individual capacities (the course which the Plaintiffs appear to desire to follow - <u>see</u> Doc. 19, p. 10), the Defendants argue that this claim must be dismissed because the Plaintiffs have not identified a cognizable constitutional violation.

To sustain an action under § 1983, a plaintiff must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." <u>Hydrick v. Hunter</u>, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). Section 1983

---

[5]There are no allegations in the Amended Complaint that anyone ever instructed R.H. to dehydrate himself.

5
CASE NO.
TITLE

requires that there be an actual connection or link between the actions of the defendants and the deprivation the plaintiff alleges to have suffered. See Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

"[T]he Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation." DeShaney v. Winnebago County Dep't of Social Servs., 487 U.S. 189, 202, 109 S. Ct. 998, 1006 (1989). Following DeShaney, the Ninth Circuit has held that "the general rule is that [a] state is not liable for its omissions." Munger v. City of Glasgow Police Dep't, 227 F.3d 1082, 1086 (9th Cir. 2000), and that the Fourteenth Amendment "generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." Patel v. Kent School District, 648 F.3d 965, 971 (9th Cir. 2011) (citing DeShaney, 489 U.S. at 196, 109 S. Ct. at 1003).

In this case, it is alleged that the Defendants both failed to take actions and engaged in a scheme to falsify weigh-ins such that R. H. suffered injuries at the hands of a third party – his wrestling opponent – on December 3, 2010. It is the law of this Circuit that "the Fourteenth Amendment typically 'does not impose a duty on [the state] to protect individuals from third parties.'" Patel, 648 F.3d at 971 (quoting Morgan v. Gonzales, 495 F.3d 1084, 1093 (9th Cir. 2007). Two exceptions exist to this rule:  (1) when a special relationship exists between the plaintiff and the state ("the special-relationship exception"); and (2) when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger ("the state-created danger exception"). Patel, 648 F.3d at 971-72 (quoting L.W. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996). This Circuit has held that a special relationship is not created between a student and his school based solely on compulsory attendance and the school's *in loco parentis* authority. Id. at 973-74. Recognizing this binding authority, the Plaintiffs argue that they are relying on the "state-created danger exception" to establish their claim.

The "state-created danger exception" applies only where there is "affirmative conduct on the part of the state in placing the plaintiff in danger," and "where the state acts with 'deliberate indifference'

6
CASE NO.
TITLE

to a 'known or obvious danger.'" Patel, 648 F.3d at 974 (quoting Munger v. City of Glasgow Police Dept., 227 F.3d 1082, 1086 (9th Cir. 2000) and Grubbs, 92 F.3d at 900). "Deliberate indifference is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Bryan County v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997).

The Defendants argue that the Amended Complaint fails both prongs of this test. First, there was no affirmative act placing R. H. in danger; rather the allegations demonstrate that the Defendants simply allowed R. H. to wrestle in a higher weight class. Second, the allegations do not establish any deliberate indifference – R. H. wrestled at this higher weight class throughout the season without incident, and even won a match, thus there was no way of knowing in advance that R. H. would be injured on December 3, 2010. Moreover, wrestling is a physically violent sport with an inherent risk of injury; R. H. voluntarily participated in this sport; and there is nothing to suggest that the Defendants knowingly placed R. H. in any higher risk of injury, or were deliberately indifferent to such a risk.

In response, the Plaintiffs point to the allegations in their Amended Complaint asserting that Summers and Racimo affirmatively took actions to ensure that R. H. would wrestle in an improperly higher weight class. Specifically, the Plaintiffs have alleged that Summers and Racimo: (1) directed R. H. to weigh in fully clothed, with shoes on and full pockets; (2) failed to properly train R. H.; (3) directed R. H. to wrestle in a weight class where he lost all but one match throughout the season; and (4) on December 3, 2010, directed R. H. to wrestle the top seeded opponent, who Summers knew was far heavier, more skilled, and more experienced than R. H. According to the Plaintiffs, these "affirmative acts" continuously placed R. H. in danger of physical harm – both throughout the wrestling season and in particular on December 3, 2010.

With respect to the deliberate indifference prong, the Plaintiffs have alleged that the Defendants – Summers and Racimo in particular – were very much aware of the mismatch between R. H. and his December 3, 2010 opponent. They were also aware that R. H. was losing weight, was wrestling in a higher weight class than he would otherwise have qualified for without the machinations of Summers and Racimo, and that he was inexperienced and relatively unskilled. Summers in particular was also aware of the size and experience of R. H.'s opponent at the December 3, 2010 match. Moreover, the

7
CASE NO.
TITLE

1   Plaintiffs have alleged that Summers and Racimo had other students with more experience who could

2   have wrestled in R. H.'s place. The Plaintiffs contend that these facts show that the Defendants were

3   deliberately indifferent to the known danger of permitting an underweight and underskilled beginner

4   wrestler to compete against an experienced, significantly heavier wrestler.

5         The Court agrees with the Plaintiffs and finds, at this early stage in the litigation, that the

6   Plaintiffs have sufficiently alleged a claim under § 1983 against Fraser, Nanez, Summers, and Racimo

7   in their individual capacities under the "state-created danger exception."[6] To be sure, many of these

8   alleged facts will be heavily disputed, but such disputes are for the ultimate trier of fact to decide, not

9   the Court on a 12(b)(6) motion to dismiss. The Court will therefore dismiss this claim to the extent it

10  is raised against these Defendants in their official capacity, and otherwise permit this claim to go forward

11  against these Defendants in their individual capacity.[7]

12  B.   Count II - Negligence Claim

13        In Count II, the Plaintiffs allege that the Defendants breached their duty to R. H. to keep him safe

14  from harm while participating in school sponsored activities. The Plaintiffs further allege that Fraser

15  and Nunez knew, or should have known, of the methods Summers and Racimo were using to manipulate

16  weigh-ins, but did nothing to stop it. The Defendants argue that this claim is barred under the

17  assumption of the risk doctrine.

18        To recover for negligence, the Plaintiffs must demonstrate that the Defendants breached a duty

19  of care they owed to them. "When the injury is to a sporting participant, the considerations of policy

20  and the question of duty necessarily become intertwined with the question of assumption of risk." Avila

---

[6] The Court is not persuaded, at this time, by the Defendants' citation to Campbell v. State of Washington Dept. of Social and Health Servs., 671 F.3d 837 (9th Cir. 2011). In Campbell, the defendants instructed a developmentally disabled adult to take a bath unsupervised, and the adult drowned. In contrast, the facts alleged in the present case suggest that Summers and Racimo did more than just fail to supervise R. H. – they intentionally manipulated weigh-ins and allowed a smaller, and unskilled wrestler to compete against a larger and more experienced opponent – which led to R. H.'s injuries.

[7] These allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6) because, among other things, the allegations would permit expert testimony, if it exists, with respect to the sport of wrestling that it would be common practice for a coach to withdraw a competing athlete from a match under the circumstances described in the Amended Complaint, and that failure to do so would be tantamount to the infliction of intentional injury.

8
CASE NO.
TITLE

v. Citrus Community College Dist., 38 Cal. 4th 148, 161 (2006).  Traditionally, the assumption of the risk doctrine involved proof that a plaintiff voluntarily accepted a specific known and appreciated risk. Id.  California, however, has created two species of assumption of risk: primary and secondary.  Id.

> Primary assumption of the risk arises when, as a matter of law and policy, a defendant owes no duty to protect a plaintiff from particular harms. Applied in the sporting context, it precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them.  Under this duty approach, a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm.

Avila, 38 Cal. 4th at 161 (internal citations omitted).[8]

Where a defendant's role is that of coach or instructor, the California courts have held that "coaches and instructors have a duty not to increase the risks inherent in sports participation." Avila, 38 Cal. 4th at 162 (citing Kahn v. East Side Union High School Dist., 31 Cal. 4th 990, 1005-06 (2003)). According to the Defendants, R. H.'s injuries arose solely from the risks inherent in the sport of wrestling, and there are no allegations that Summers, Racimo, or any other Defendant increased those inherent risks.

In response, the Plaintiffs again point to the allegations in their Amended Complaint that Summers and Racimo deliberately engaged in a scheme to ensure that underweight wrestlers would compete in weight classes far above what they would otherwise qualify for, and deliberately and intentionally directed R. H. to wrestle an opponent who outweighed him by approximately 25 pounds, and was far more experienced.  The Plaintiffs also point to their allegations that other, more experienced wrestlers were available to wrestle in R. H.'s place, but that the Defendants chose instead to place R. H. in a foreseeably dangerous situation.  According to the Plaintiffs, these allegations are sufficient to defeat the Defendants' motion to dismiss, and make a plausible claim that the Defendants engaged in reckless conduct outside the range of ordinary teaching and coaching activities such that the primary assumption

---

[8]Secondary assumption of the risk arises when the defendant still owes a duty of care, but the plaintiff knowingly encounters the risks attendant on the defendant's breach of that duty. Knight v. Jewett, 3 Cal. 4th 296, 308 (1992). The Defendants have not argued secondary assumption of the risk.

of the risk doctrine does not apply.

Taking the allegations as true at this stage of the litigation, the Court finds that the Plaintiffs have stated a claim for relief that is plausible on its face and survives dismissal. The determination of whether the Defendants in fact acted in a reckless manner, and whether the risk of harm to R. H. on December 3, 2010 was foreseeable and avoidable cannot be determined without a fully developed factual record. The Defendants' motion to dismiss Count II shall be denied.[9]

C.   Count IV - Failure to Train/Hire/Supervise 42 U.S.C. § 1983 Claim

In their fourth claim, the Plaintiffs allege that Fraser and Nanez, in their respective roles as principal and athletic director at Fisher Middle School, knew about Summers' and Racimos' practices concerning athlete weigh-ins, and took no action to properly train or directly supervise Summers and Racimo to stop these practices. The Defendants raise the same arguments for dismissal of this claim, as they do in the prior § 1983 claim (Count I).[10] The Court will therefore treat this claim in the same manner. To the extent this claim is raised against Fraser and Nanez in their official capacities, it shall be dismissed. To the extent this claim is alleged against Fraser and Nanez in their individual capacities, it shall go forward.[11]

D.   Count V - Intentional Misrepresentation Claim

The Defendants seek dismissal of the intentional misrepresentation claim (which is alleged against Summers and Racimo) on the ground that the Plaintiffs have failed to identify a statute upon which such liability can be based. See Cal. Gov't Code § 815 ("Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the

---

[9] The Court notes that with the exception of Avila, the decisions cited by both sides on the primary assumption of the risk doctrine were all decided at the summary judgment stage, after the completion of discovery. See e.g. Kahn v. East Side Union High School Dist., 31 Cal. 4th 990 (2003); Bushnell v. Japanese-American Religious and Cultural Center, 43 Cal. App. 4th 525 (1996); Connelly v. Mammoth Mountain Ski Area, 39 Cal. App. 4th 8 (1995); Wattenbarger v. Cincinnati Reds, Inc., 28 Cal. App. 4th 746 (1994); Galardi v. Seahorse Riding Club, 16 Cal. App. 4th 817 (1993).

[10] Notably, the Defendants make no argument that Fraser and Nunez, as supervisors, would be subject to palpably different legal theories of liability than the other individual Defendants would be subjected to. See e.g., Lacey v. Maricopa County, ___ F.3d ___, 2012 WL 3711591 at * 10 (9th Cir. Aug. 29, 2012).

[11] The Court also rejects the Defendants' contention that this claim is duplicative of Count I.

public entity or a public employee or any other person."). Because a claim of intentional misrepresentation is a common law tort, the Defendants contend that there is no statutory basis for the claim. See Iverson v. Muroc Unified School Dist., 32 Cal. App. 4th 218, 227 (1995) ("It is well recognized that a cause of action for personal injuries may be stated against a public entity only if authorized by statute.").

The Plaintiffs rely on Cal. Gov't Code § 815.6 and Cal. Educ. Code § 44807 as their sources of statutory liability. Section 815.6 provides "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." The mandatory duty the Plaintiffs point to is found in Cal. Educ. Code § 44807: "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess."

The Amended Complaint in its current form, however, does not assert a claim based on either of these statutory authorities. Count V does not cite to either of these statutes, does not assert that Summers or Racimo violated any mandatory duties at the time of R. H.'s injury, does not assert that they were teachers, and does not assert that the injuries to R. H. occurred "on the way to and from school, on the playgrounds, or during recess." Further, the cases the Plaintiffs cite to in support of their reliance on Cal. Educ. Code § 44807 fall squarely within the parameters of that statute – meaning they each dealt with injuries that occurred on school grounds or a school playground, on the way to or from school, or during recess.[12] Rather than support the Plaintiffs' argument, these decisions suggest that adherence to

---

[12] See Dailey v. Los Angeles Unified School Dist., 2 Cal. 3d 741 (1970) (student was killed on the playground of a high school while engaging in a "slap fight" during recess); J.H. v. Los Angeles Unified School Dist., 183 Cal. App. 4th 123 (2010) (student was sexually assaulted in an unlocked storage shed on school grounds near playground during after school program); Michael Hoyem v. Manhattan Beach City School Dist., 22 Cal. 3d 508 (1978) (student was injured when he left school grounds during school hours); Taylor v. Oakland Scavenger Co., 17 Cal. 2d 594 (1941) (student injured while running from gymnasium to the school field during physical education class); Castaneda v. Inglewood Unified School Dist., 2008 WL 2720631 (Cal. App. 2nd Dist. July 14, 2008) (students were assaulted by two other students while walking towards a school exit); Leger v. Stockton Unified School Dist., 202 Cal. App. 3d 1448 (1988) (student was attacked by a nonstudent in a school restroom during wrestling practice). The Plaintiffs' reliance on Parsons v. Crown Disposal Co., 15 Cal. 4th 456 (1997) is equally unavailing as that case did not involve school employees or injuries to a student.

11

CASE NO.
TITLE

United States District Court
For the Northern District of California

the requirements of § 44807 is necessary for a viable claim to go forward.

The Court also questions whether this claim can go forward as the Plaintiffs have not cited, nor has the Court located, any decisions where a school employee can be held liable for an <u>intentional tort</u> under either Cal. Gov't. Code § 815.6 or Cal. Educ. Code § 44807. Rather, all of the decisional authority addresses claims for negligence and/or negligent supervision – claims already raised by the Plaintiffs in this case.

The Court will therefore grant the motion to dismiss as to Count V, and give the Plaintiffs leave to amend to assert a claim for relief for intentional misrepresentation.[13]

E.   <u>Count VI - Concealment Claim and Count VII - Negligent Misrepresentation Claim</u>

The Defendants seek dismissal of the concealment and negligent misrepresentation claims – both of which are asserted against Summers and Racimo – for the same reasons that they seek dismissal of the intentional misrepresentation claim: (1) there is no statutory authority permitting such a claim to go forward; and (2) the Plaintiffs have not sufficiently alleged all of the elements of these claims. The Court agrees and will dismiss both claims with leave to amend.

F.   <u>Count VIII - Dangerous Condition of Public Property Claim</u>

The Plaintiffs eighth cause of action is asserted against the School District and the Recreation Department, and alleges that these Defendants breached their duty to properly test and inspect the wrestling mat used on December 3, 2010, and that the mat was in fact substandard, thereby contributing to R. H.'s injuries. The Defendants argue, and have asked the Court to take judicial notice of, the fact that the December 3, 2010 wrestling match took place at Wilcox High School, which is located in the Santa Clara Unified School District, and therefore the mats used were not the property of either Defendant, and were outside of their control. <u>See</u> Doc. 14. <u>See</u> <u>also</u> Cal. Gov't. Code § 835 ("Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of **its** property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, . . .")

---

[13] The Court further notes that the Plaintiffs have not sufficiently alleged all of the elements of a claim for intentional misrepresentation, in particular, the element of justifiable or reasonable reliance. The Plaintiffs shall also be granted leave to amend to assert the elements of this claim. <u>See</u> <u>Perlas v. GMAC Mortgage, LLC</u>, 187 Cal. App. 4th 429, 434 (2010) (listing elements of a claim for intentional misrepresentation).

12
CASE NO.
TITLE

(emphasis added).

In response, the Plaintiffs have abandoned their claim with respect to the School District, and instead argue that the Recreation Department had a duty to inspect the mats because the Recreation Department hosted the wrestling match. The Plaintiffs seek leave to amend to further explain this theory of liability. The Court will therefore grant the motion to dismiss this claim, and allow the Plaintiffs leave to amend to assert a claim against the Recreation Department alone.

G.     Count IX - Presumption of Negligence Per Se Claim

In California, negligence *per se* is an evidentiary presumption of negligence; it is not a separate cause of action. See Cal. Evid. Code § 669. Thus, the Defendants seek dismissal of this claim as duplicative of Count II. Further, the Defendants assert that the presumption would not apply in this case. The Court agrees on both accounts.

The negligence *per se* doctrine applies when the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused the death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statue, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or injury to his or her person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. Alcala v. Vazmar Corp., 167 Cal. App. 4th 747, 755 (2008); Alejo v. City of Alhambra, 75 Cal. App. 4th 1180, 1184-85 (1999). In this case, the Plaintiffs point to the Public School Wrestling Rules, which the Plaintiffs contend the Defendants violated to the detriment of R. H. However, the Plaintiffs have nowhere alleged that these rules equate to a statute, ordinance, or regulation with the force of law, a fact that the Plaintiffs appear to concede in their response (Doc. 19, p. 24). Instead, the Plaintiffs argue that the factual allegations of their negligence *per se* claim should be relied upon in support of their negligence claim asserted in Count II.

The Court will therefore dismiss Count IX as both duplicative and for failing to state a claim for relief.

H.     Count X - Negligent Infliction of Emotional Distress Caim

The Defendants seek dismissal of the Plaintiffs' negligent infliction of emotional distress claim asserted against all Defendants because it is redundant of the other negligence claims already asserted.

13
CASE NO.
TITLE

1  In response, the Plaintiffs appear to argue that they are asserting this claim both on behalf of R. H. and
2  his father, Richard. H. To the extent this claim is asserted on behalf of R. H., it is subsumed by his other
3  claims for negligence (Counts II-IV), and is due to be dismissed. See Marlene F. v. Affiliated
4  Psychiatric Medical Clinic, Inc., 48 Cal. 3d 583, 588 (1989) ("[The] negligent causing of emotional
5  distress is not an independent tort but the tort of negligence. . . .") (internal citations and emphasis
6  omitted). See also Limon-Rodriguez v. U.S. Dept. of Homeland Security, 2012 WL 1416274 (S.D. Cal.
7  April 24, 2012) (dismissing negligent infliction of emotional distress claim as redundant where
8  complaint already included a claim for negligence).

9  To the extent this claim is brought on behalf of Richard H., the Defendants further argue that the
10 Amended Complaint only alleges intentional conduct by Racimo and Summers, which cannot support
11 a claim for negligence. The Court disagrees - the Plaintiffs have sufficiently alleged negligence on the
12 part of all Defendants, as well as all elements of a "bystander theory" of liability such that this claim can
13 survive a Rule 12(b)(6) attack. See Doc. 4, ¶¶ 33, 40, 56-60, 62-67, 122-124. See also Burgess v.
14 Superior Court, 2 Cal. 4th 1064, 1071-73 (1992) (setting forth elements of the "bystander theory" of
15 negligent infliction of emotional distress).

16 The Court will dismiss this claim to the extent it is raised on behalf of R. H., but otherwise deny
17 the motion to dismiss.

18 I.    Count XI - Intentional Infliction of Emotional Distress Claim

19 The elements of the tort of intentional infliction of emotional distress are "(1) extreme and
20 outrageous conduct by the defendant with the intention of causing, or reckless disregard of the
21 probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional
22 distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous
23 conduct." Ess v. Eskaton Properties Inc., 97 Cal. App. 4th 120, 129 (2002) (quoting Cervantez v. J. C.
24 Penny Co., 24 Cal. 3d 579, 593 (1979)). The Defendants argue that the Plaintiffs have not sufficiently
25 alleged the element of "extreme and outrageous conduct."

26 While this is a close case, the Court finds that the Plaintiffs, at this motion to dismiss stage and
27 without the benefit of discovery, have sufficiently set forth a claim for intentional infliction of emotional
28 distress that is plausible on its face. The Plaintiffs contend that the Defendants deliberately, recklessly,

14
CASE NO.
TITLE

and/or negligently ignored numerous wrestling rules and safety procedures, and facilitated R. H. wrestling an opponent who greatly overmatched him, causing severe or extreme emotional distress to R.H..  This is sufficient to survive dismissal, and the motion to dismiss this claim will be denied.

## IV.

### Conclusion

Accordingly, upon due consideration, it is ORDERED that the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 13) is GRANTED IN PART AND DENIED IN PART as follows:

(1) Count I (the 42 U.S.C. § 1983 claim against Fraser, Nanez, Summers and Racimo) is DISMISSED WITH PREJUDICE to the extent it is raised against these Defendants in their official capacity.  Count I shall go forward to the extent it is raised against these Defendants in their individual capacities;

(2) Count IV (the 42 U.S.C. § 1983 claim against Fraser and Nunex) is DISMISSED WITH PREJUDICE to the extent it is raised against these Defendants in their official capacity.  Count IV shall go forward to the extent it is raised against these Defendants in their individual capacities;

(3) Count V (the intentional misrepresentation claim), Count VI (the concealment claim), and Count VII (the negligent misrepresentation claim) all asserted against Summers and Racimo, are each DISMISSED WITHOUT PREJUDICE.  Within fourteen (14) days from the date of this Order, the Plaintiffs shall file an amended complaint to correct the deficiencies with respect to these claims as outlined in this Order;

(4) Count VIII (the dangerous condition of public property claim against the School District and the Recreation Department) is DISMISSED WITH PREJUDICE to the extent it is raised against Defendant Los Gatos Union School District.  Within fourteen (14) days from the date of this Order, the Plaintiffs may file an amended complaint asserting this claim against Defendant Los Gatos-Saratoga Community Education and Recreation;

(5) Count IX (the negligence *per se* claim against the School District and Recreation Department) is DISMISSED.

(6) Count X (the negligent infliction of emotional distress claim against all Defendants) is DISMISSED WITH PREJUDICE as it pertains to Plaintiff R. H.  The claim may proceed to the extent

15
CASE NO.
TITLE

1  it is asserted on behalf of Plaintiff Richard H.

2        (7)    In all other respects, the motion to dismiss is DENIED.

The Court further notes that the entire Amended Complaint is an impermissible shotgun pleading, incorporating all preceding paragraphs into each subsequent claim for relief, and thereby failing to comport with Fed. R. Civ. P. 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." In re Metropolitan Sec. Litig., 532 F. Supp. 2d 1260, 1279 (E. D. Wash. 2007); Rashdan v. Geissberger, 2011 WL 197957 at * 10 (N.D. Cal. Jan. 14, 2011). Should the Plaintiffs chose to file an amended complaint within the allotted time limit, they are further directed to fix this deficiency.

**IT IS SO ORDERED.**

Dated: September 14, 2012

UNITED STATES DISTRICT JUDGE

CASE NO.
TITLE